**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>    **Plaintiff**<br><br>    **v.**<br><br>**MAXIELY CORDOVA-GUERRA**<br>    **Defendant** | **Criminal No. 05-062 (JAG)** |

**MAGISTRATE-JUDGE'S REPORT AND RECOMMENDATION**

I.    **Factual and Procedural Background**

On February 24, 2005, defendant Maxiely Córdova-Guerra (hereafter "Córdova") was charged by the Grand Jury in a two count indictment with violation to Title 21 U.S.C. Section 841(a)(1) and Title 18 U.S.C. Section 924(c)(1)(A)(B).

In Count I it is alleged that Córdova, on February 21, 2005; illegally possessed with intent to distribute, five hundred (500) grams or more of a mixture or substance containing a detectable amount of cocaine.  Count II charges that on the same date, during and in relation to a drug trafficking offense (the one charged in Count I), Córdova did knowingly and unlawfully possessed a firearm.

Thereafter, on June 7, 2005, defendant moved for the suppression of the narcotics and weapon seized by law enforcement officers, as well as for the suppression of statements given by defendant at the time of arrest.  In requesting the suppression of tangible evidence, Córdova asserts that the evidence was seized through an illegal search and that the statements resulted from custodial interrogation after an illegal arrest.  (**Docket No. 22**.)

The government opposed defendant's motion asserting that the arrest was legal and the seizure of evidence was the result of either it being in plain view or subjected to inevitable discovery being it the product of an inventory search. (**Docket No. 28**.)

An evidentiary hearing was held.  The government presented the testimony of four witnesses, three of which were law enforcement agents.  Defendant presented the testimony of two witnesses, who at the time of defendant's arrest, were nearby the arrest site. (**Docket No. 33**.)

II.      **The Evidence**

         A.      **The Facts**

Based on the testimony of witnesses and the other evidence presented in court, this Magistrate-Judge determines the following are the credible facts that led to Córdova's arrest:

On February 21, 2005, Sargent Víctor Nieves (hereafter "Sgt. Nieves"), a Municipal Police Officer employed by the Guaynabo Municipal Police, was on duty along with three other fellow officers.  Sgt. Nieves and his fellow officers were on duty and during the afternoon hours, were patrolling Road 833, at Bo. Guaraguao, Guaynabo, Puerto Rico.  Sgt. Nieves was traveling in the front passenger seat of a Dodge Van official vehicle being driven by Municipal Police Officer Omar Rodríguez (hereafter "Officer Rodríguez").  Reportedly, they were traveling at an approximate speed of 20-25 miles per hour in direction "Guaynabo-Aguas Buenas[1]."  Road 833 is a two lane road.  While approaching Landrau Gas Station, the police officer noticed there was a small, compact vehicle, "clear in color" parked next to a

---

[1]Officer Omar Rodríguez testified they were traveling at approximately 10 to 15 miles per hour.

gas pump at the Landrau Gas Station.  The vehicle was parked heading in the opposite direction (Aguas Buenas-Guaynabo).  The gas pump where defendant's car was parked, is the one closest to Road 833 (**Defendant's Exhibit 2**).

Both officers, Sgt. Nieves and Officer Rodríguez, initially noticed while driving by, that the driver's door of defendant's vehicle was opened, the glass window was down and defendant Córdova was sitting in the driver's seat, leaning forward with his torso slightly to his left towards the door.  Both officers coincided in having observed while Córdova was unwrapping a brown cigar which was described as a "Phillip."  Córdova was observed with his head down "as concentrated in what he was doing."  He was also seen with a plastic bag in his right hand pouring something into the tobacco wrapping.  Based on prior experiences, Sgt. Nieves decided to intervene.  He instructed Officer Rodríguez to turn around ("U" turn) and park the official vehicle "slightly behind but parallel to defendant's car[2]."

The agents' testimonies establishes they all stepped out of the official vehicle and approached the rear of Córdova's vehicle.  At the same time, Córdova approached the law enforcement officers and addressed Sgt. Nieves stating "officer, this is all I have."  Sgt. Nieves and Officer Rodríguez both assured that while saying so, Córdova handed to Sgt. Nieves a cigar wrapping with marihuana residue[3].

Reportedly, while in the rear part of his vehicle, standing next to the vehicle's trunk, Córdova was searched by Sgt. Nieves.  Meanwhile, Officer Rodríguez walked around

---

[2]While there were discrepancies between the government's and defendant's witnesses in regards to the exact location of the police vehicle, such discrepancy is irrelevant to the main controversy.

[3]Sgt. Nieves asserted that Córdova "spilled the shredded material in my hands."

Córdova's vehicle and reported having seen, in plain view; a plastic "Zip-lock" bag with marihuana residue.  The bag was in the console, within the two front seats, where the break handle is located.  Sgt. Nieves instructed Officer Rodríguez to seize it.  Officer Rodríguez opened the door, introduced his torso within Córdova's car[4] to get the bag and while doing so, he observed a "gun handle" protruding from underneath the driver's seat[5].  The weapon was also seized and Córdova was placed under arrest and advised of his constitutional (Miranda) rights.

While defendant's arrest took place, the two other municipal police officers provided "support" (surveillance) to their fellow agents.  After Córdova's arrest, his vehicle was driven by a police officer[6] to the Guaynabo Police Station and an inventory search was conducted.  The same revealed and law enforcement seized from behind the driver's seat: 1.12 kilograms of cocaine; three cellular phones; a plastic bag with marihuana residues "which was three-fourth opened", and some ledgers[7].  (*See* **Exhibits A, B and C**).

While defendant's counsel consistently and actively tried to discredit the law enforcement officers statements and recollection of events, the truth remains, that both officers (Sgt. Nieves and Officer Rodríguez) have over seven (7) years of experience within the Municipal Police.  Sgt. Nieves has personally carried-out over 20 arrests of individuals

---

[4]Other witnesses described that Officer Rodríguez "slided over the front seats".

[5]At one point during his testimony, Sgt. Nieves states that Officer Rodríguez "lifted the carpet" to seize the weapon.  This does not contradict the scenario described by Officer Rodríguez.

[6]The agent was identified as Police Officer Joe Acosta.

[7]Special Agent Héctor Cartagena, a law enforcement agent employed by the Drug Enforcement Agency took custody of all evidence seized by the municipal police officers.  He asserted all evidence shown in court, was in the same way it was provided to him.  He assured the Zip-lock plastic bag was "opened",as it was at the time in which seized.

dealing in marihuana, and had approximately 25 to 30 seconds to observe Córdova's actions. Officer Nieves clarified he had observed, in prior incidents, individuals while "rolling cigars", that he was able to recognize the "Phillips" or "Philly", and that the cigar he observed was brown and approximately 6 inches long.  All of this he observed from an approximate distance of 25 feet, which was the distance between defendant's vehicle and his patrol unit.

The law enforcement officers' testimonies was further bolstered by the testimony of Axel Landrau, cashier at the Landrau Gas Station on February 21, 2005.  Axel Landrau (hereafter "Landrau") indicated that on said date, Córdova drove into the gas station, parked parallel to the gas pump closest to the main road, walked to the cashier's booth and paid "for gas and a Phillip cigar."  He observed Córdova going back to his car and indicated Córdova remained inside his car "for less than a minute" before the police arrival.  Landrau asserts that from his position within the cashier's booth, he did not have good visibility of defendant's vehicle, much less of what defendant was doing inside the vehicle.  Similarly, he could not hear what was spoken nor see if defendant Córdova ever handed anything to the police officers.  Neither did Landrau see the officers searching Córdova's vehicle; though he saw one of the officers getting inside the vehicle "for less that than two (2) minutes", Landrau did recall that when he saw the police vehicle, it was approaching the gas station in the Aguas Buenas-Guaynabo direction, as was defendant's vehicle[8].

The defense introduced the testimony of María del Carmen Santana (hereafter "Santana") and her husband Juan C. Rosario-Alamo (hereafter "Rosario-Alamo").  They own a two story structure where their residence and business are located.  A tire repair shop,

_____

[8]This was after the police officers had turned around in Road 833 between the gas station and a Tire Repair Shop located nearby.

operated by Rosario-Alamo is located at the lower level.  The second level is their residence. Santana narrated that on February 21, 2005, she was at her residence, next to a window, looking down at her husband's work area, when she noticed a police car approaching the Landrau Gas Station.  The official vehicle was traveling or headed towards Guaynabo and parked at the gas station "sideways like blocking Córdova's vehicle."  She saw Córdova getting out of his vehicle which was parked next to the gas pump closest to the main road. Reportedly, Córdova closed the car door behind him, walked around his vehicle towards the rear end, towards the trunk.  He was approached by the police officers and she was able to observe Córdova while emptying his pockets and being searched  while  holding his hands to his neck.  While she observed four officers at the site, she recalled that only one was searching Córdova. Santana narrated she observed an officer opening the door to Córdova's vehicle and "placing his head inside", but she did not see Córdova handing anything to the officers.

Santana testified in cross-examination that she was not able to listen to the conversation on site, nor did she see Córdova at the cashier window at the gas station. Throughout her testimony, Santana depicted the exact location of her residence, the gas station and the area where the official vehicle and that of Córdova were parked.  (*See* **Exhibit 2.)**

The testimony of Rosario-Alamo was fairly consistent with that of Santana.  He was alerted by his wife of the police intervention with Córdova at the gas station[9].  Thus, he was not privy to incidents transpiring prior to the police arrival or intervention at the gas station.

---

[9]Rosario-Alamo acknowledged that he has known Córdova since childhood.  He also knows several members of his family and admitted that Córdova was a customer at his shop.

Rosario-Alamo narrated that once alerted by his wife, he ran towards the road and stood at a distance from "70 to 75 feet or less[10]."  From his position he saw the police car parked slightly on the side of defendant's vehicle, blocking it.  He observed some cash and keys over the trunk of Córdova's vehicle and saw Córdova holding his hands to his neck.  He observed a police officer sliding through the seats of Córdova's vehicle and later, observed while Córdova was arrested.  While no other person corroborates his testimony, Rosario-Alamo claims he heard an officer instructing another to search underneath the seats[11].

In cross-examination Rosario-Alamo admitted he did not see Córdova while purchasing and paying for a cigar, and could not tell if Córdova had voluntarily given anything to the police officers, nor what Córdova was doing prior to the police intervention.

## III.    Legal Standard and Analysis

"In <u>Terry v. Ohio</u>, the Supreme Court first recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.  This authority permits officers to stop and briefly detain a person for investigative purposes and diligently pursue a means of investigation likely to confirm or dispel their suspicions quickly."   <u>United States v. Trueber</u>, 238 F.3d 79, 91 (1st Cir. 2001) (internal quotations and citations omitted).

---

[10]Rosario-Alamo estimated the distance from the road's right lane to the gas pump in 60-70 feet and the distance from the edge of the road to the gas pump in 25 to 30 feet.

[11]Even assuming this testimony is correct, it is still consistent with Sgt. Nieves testimony indicating that when told by Officer Rodríguez that a bag with residue and a protruding object (weapon handle) could be seen in Córdova's vehicle, he instructed Officer Rodríguez to seize those items.

Similarly, in the instant case, without a doubt, the police officers observed "unusual conduct which le[d] [them] reasonably to conclude in light of [their] experience that criminal activity may be afoot," Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), such as would justify a legitimate investigative detention.

When the police officers first noticed the defendant, he was not just "pumping gas" as he alleges in his Motion to Suppress. Rather, defendant was sitting in the driver's seat of his vehicle with the door and window open, parked at a public gas station next to a gas pump. The gas pump was the closest to the public road. On the date of arrest, law enforcement officers were driving their official vehicle slowly, on routine patrol of the area, and clearly observed the defendant leaning forward, head down in concentration, with his torso shifted somewhat towards the door[12]. The distance was short, some 20-25 feet, and two of the officers on patrol, Sgt. Nieves and Officer Rodríguez, were able to see that the defendant was unwrapping a "Phillip" cigar and putting something into the tobacco wrapping, holding a plastic bag in his right hand.

Both Sgt. Nieves and Officer Rodríguez were experienced police officers. Sgt. Nieves, particularly, had personally conducted over 20 marihuana-related arrests, and was familiar with marihuana users' practice of "rolling cigars." Thus, from the officers' standpoint and experience it appeared as if the defendant was emptying tobacco from a cigar in order to use its wrapping to roll a marihuana cigarette.

Needless to say, the officers' observations aroused their suspicions and Sgt. Nieves ordered Officer Rodríguez to drive up to the gas station and park the official vehicle behind

---

[12]This testimony is later corroborated by Axel Landrau, cashier at Landrau Gas Station who recalled that after payment for gas and a cigar, defendant entered and remained inside his vehicle for some time.

the defendant's.  As the four police officers exited the official vehicle –Sgt. Nieves, Officer Ortíz, and two others– and walked towards the rear of defendant's vehicle, the defendant stepped out of his car.  Without any inquiry by the police officers, the defendant gave Sgt. Nieves the cigar wrapping with marihuana residue while saying, "Officer, this is all I have." Based on these specific and experienced observations of defendant's behavior and articulable facts, the police officers had sufficient grounds to reasonably belief that the defendant was engaged in criminal drug-related behavior.

The defendant now protests that his remark is a by-product of un-Mirandized custodial interrogation[13].  However, at the time, the defendant had not been even been arrested;  indeed, the officers had not even formally initiated the investigative stop since they had just stepped out of their own official vehicle.  It is a well settled legal principle that:

> For *Miranda* purposes, interrogation is express questioning or its functional equivalent.  Interrogation occurs only when police conduct is reasonably likely to elicit an incriminating response from the suspect. Moreover, words or actions normally attendant to arrest and custody do not constitute interrogation.  United States v. Genao, 281 F.3d 305, 310 (1st Cir. 2002) (internal punctuation and citations omitted).

The facts before us indicate that, rather than the product of custodial interrogation, defendant's remark can better be described as an excited utterance.  In fact, the subsequent events support the conclusion that defendant's "excited utterance" may have been a futile attempt to minimize the depth of the police officers' legal intervention and/or possible

---

[13] "*Miranda* warnings inform a suspect that he 'has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.' Dickerson v. United States, 530 U.S. 428, 435, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (quoting Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966))." United States v. Fornia-Castillo, 408 F.3d 52, 63 (1st Cir. 2005).

search in the hopes that the plastic bag with marihuana residue, weapon, cellular phones, ledger, and cocaine that were eventually uncovered would not be found.  The defendant's second attempt to use his pre-arrest remark to gain advantage is equally futile before this Court.  We thus find that the officers conducted themselves in compliance with the boundaries set forth by <u>Terry</u> and its progeny, and that the defendant's remark was both voluntary and non-custodial, and therefore admissible at trial.

Defendant next contends that all other evidence was illegally seized.  The evidence on records shows that following the defendant's remark, Sgt. Nieves conducted a protective pat-down.  The facts support the conclusion that the officers had cause to belief that the defendant was engaged in criminal behavior and could very well be armed and dangerous. The defendant's remark only served to escalate the officers' reasonable suspicion into probable cause to arrest.  As stated by the appeals court in <u>United States v. Lee</u>, 317 F.3d 26, 31-32 (1ˢᵗ Cir. 2003) (internal citations omitted):

> Probable cause is a fluid concept.  Its existence must be evaluated under the entirety of the circumstances.   Probable cause to arrest does not demand either the same quantum of proof  or the same degree of certitude as a conviction.  Probable cause does, however, require reasonably trustworthy information such as would lead a prudent person to believe that the suspect likely had committed or was committing a criminal offense.

In the meantime, while Sgt. Nieves conducted the protective pat-down, Officer Rodríguez walked around the defendant's car observing it with more detail.  It is in this process of observation that Officer Rodríguez noticed the clear plastic "zip lock" bag with marihuana residue in "plain view" in the emergency hand brake lever area located between the two front seats. Sgt. Nieves instructed Officer Rodríguez to seize the plastic bag. He then opened the door of the car and introduced the upper portion of his body to reach the

plastic bag.  It was then that he noticed the handle of a weapon protruding from beneath the driver's seat, whereupon he seized both the weapon and plastic bag.  Defendant was then placed under arrest and advised of his rights.

In <u>Michigan v. Long</u>, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the police had reasonable suspicion to believe that the occupants of a vehicle were dealing drugs, based on their observation of an apparent transaction with another person minutes before. The Supreme Court held that the police could stop the vehicle, order the occupants out and conduct a search of the passenger compartment for weapons, including a locked glove compartment.   Pursuant to <u>Michigan v. Long</u>, a protective frisk of the passenger compartment is valid even when the passengers have been removed from the car before the frisk takes place.

In the instant case, the police officers observed the defendant first-hand engaging in conduct which, based on their experience, was consistent with criminal activity. When they approached the defendant to investigate and dispel their suspicions, the defendant volunteered the marihuana-laden cigar wrapping saying, "Officer, this is all I have."  The police officers' suspicions were instantly dispelled by the defendant himself, and reasonable suspicion gave way to probable cause to arrest the defendant.  Thus, any ensuing search of the passenger area of the vehicle incident to the investigative stop and the ensuing arrest would have been legal.

Moreover, the bag was in plain view inside the passenger compartment area of the car, reaffirming the officers' initial observation that the defendant was holding a plastic bag in his hand.  In this regards, it is to be noted that "the mobility of automobiles and the

attendant need to prevent loss of evidence undergirds" an exception to the warrant requirement. <u>United States v. López</u>, 380 F.3d 538, 543 (1st Cir. 2004). "A warrantless search of an automobile will be upheld if officers have probable cause to believe that the vehicle contains contraband." <u>Id</u>., citing <u>United States v. Ross</u>, 456 U.S. 798, 808, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (internal quotations omitted).

In the case at bar, the search conformed to legal standards under the "automobile exception" to search warrants and was necessary to prevent the loss of evidence, especially when, as in this case, the officers initially observed the defendant engaging in illegal conduct inside the vehicle.  The fact that Officer Rodríguez could not see the weapon's handle protruding from beneath the driver's seat of the car until he reached in to retrieve the plastic bag does not detract from the legality of its seizure.  Incident to a valid investigative stop and the defendant's arrest, Officer Rodríguez's act of reaching in to retrieve the plastic bag in plain view was within the purview of the Fourth Amendment.  This enabled him to catch a glimpse of the weapon's handle and thus the seizure of the weapon is legal as well[14].

In <u>Michigan v. Long</u>, <u>supra</u> at 1050, the Supreme Court found that ,"[i]f, while conducting a legitimate *Terry* search of the interior of [an] automobile, [an] officer should … discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances."  In the same vein, Officer Rodríguez was not required to ignore his

---

[14]This Magistrate-Judge is cognizant of the testimony provided by Rosario-Alamo who asserts that one officer told another to search underneath the seats.  However, Officer Rodríguez testified that upon seeing a protruding object, underneath the seat, that looked like a "weapon handle", he notified Sgt. Nieves. Reportedly, Sgt. Nieves instructed him to seize the object that resulted to be the weapon.

discovery of the weapon when he reached in to seize the plastic bag in plain view.  By the same token, under the facts herein, the Fourth Amendment does not require its suppression.

The officers seized contraband from the defendant and contraband was also in plain view within the passenger compartment, where a weapon was also seized.  The existence of probable cause to search the entire vehicle for contraband is, in this case, patently obvious.  See, e.g., United States v. Maguire, 918 F.2d 254 (1st Cir. 1990), cert. denied, 499 U.S. 950, 111 S.Ct. 1421, 113 L.Ed.2d 474 (1991).

In any event, "when a driver is lawfully arrested and thus disabled to continue his journey, the Constitution permits the police to carry out a routine inventory examination incident to impounding the vehicle."  United States v. Zapata, 18 F.3d 971, 978 (1st Cir. 1994) (holding that officers' observation of defendants loading bags into car provided probable cause to search entire vehicle incident to lawful arrest).  The Zapata court stated:

> Even if ... the search [was] invalid, suppression would not lie in this instance for the contraband inevitably would have been discovered. Evidence which comes to light by unlawful means nonetheless can be used at trial if it ineluctably would have been revealed in some other (lawful) way, so long as (I) the lawful means of its discovery are independent and would necessarily have been employed, (ii) discovery by that means is in fact inevitable, and (iii) application of the doctrine in a particular case will not sully the prophylaxis of the Fourth Amendment.

Id. (internal quotations and citations omitted).

It stands to reason that the police officers would have impounded the defendant's vehicle and, as part of this procedure, conducted a standard inventory search of the entire vehicle, including the trunk.  Therefore, all evidence seized from the vehicle, such

as the one kilo of cocaine, the cellular phones, the ledger and the weapon would inevitably have been discovered.

## IV.   Conclusion

For the reasons above-stated, this Magistrate-Judge **RECOMMENDS** that defendant's Motion to Suppress the evidence seized and statement provided at the time of arrest, be **DENIED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court. Any objections to the same must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980). The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

**SO RECOMMENDED.**

At San Juan, Puerto Rico, this 13th day of December, 2005.

**S/AIDA M. DELGADO-COLON**
**U.S. Magistrate-Judge**